```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ANNA WALDMAN,

                        Plaintiff,           MEMORANDUM & ORDER
                                             09-CV-3514 (JS) (MLO)
           -against-

NEW CHAPTER, INC.,

                        Defendant.
----------------------------------------X
APPEARANCES:
For Plaintiff:     Harry I. Katz, Esq.
                   Harry I. Katz, P.C.
                   61-25 Utopia Parkway
                   Fresh Meadows, NY 11365

For Defendants:    David Paul Kasakove, Esq.
                   Bryan Cave LLP
                   1290 Aveune of the America
                   New York, NY 10104
```

SEYBERT, District Judge:

Anna Waldman, on behalf of herself and others similarly situated, filed a putative class action against New Chapter, Inc., alleging that New Chapter misled consumers by listing their "Berry Green" product's weight in grams rather than ounces, and by including too much empty space ("slack fill") in the product's packaging. New Chapter has moved to dismiss. For the following reasons, that motion is GRANTED IN PART AND DENIED IN PART.

BACKGROUND

In 2009, Plaintiff purchased a box of Berry Green, a "Spoonable Whole-Food." Compl. ¶ 12; Pl. Ex. 2.[1] Berry Green is sold by net weight. Compl. ¶ 1; Pl. Ex. 2. Berry Green lists only its metric weight (180 grams), not its weight according to the U.S. Customary or "imperial unit" system. Pl. Ex. 2. Berry Green comes in a box that is $6^{5/8}$ inches tall. Compl. ¶ 12. The box contains a jar that is $5^{5/8}$ inches tall. Compl. ¶ 15. And the jar itself is only half-filled with the product. Compl. ¶ 16.

Plaintiff claims that "most consumers in the United States" are unfamiliar with the metric system. Compl. ¶¶ 7, 19. But contrary to Plaintiff's claim in her opposition brief, the Complaint does not allege that Plaintiff herself is unfamiliar with the metric system. Plaintiff further contends that the package's size, in relation to the amount of product it contains, misleads the consumer into believing "that the consumer is buying more than is actually contained in the jar." Compl. ¶ 4. To that end, Plaintiff alleges that she did not know when she purchased the product that she was "only purchasing an amount of the product that was less than half the

---

[1] Exhibit 2 is an actual Berry Green package. The Complaint makes numerous references to this package, describing it in great detail. Thus, the Court may take judicial notice of the actual package, even on a motion to dismiss.

size of the box . . . and/or less than half the size of the jar in which the product was contained." Compl. ¶ 40. And Plaintiff further alleges that "[h]ad defendant adequately disclosed the true amount of the product, plaintiff would not have purchased defendant's product."

This suit followed.

## DISCUSSION[2]

I. <u>Standard Of Review On A Motion To Dismiss</u>

In deciding FED. R. CIV. P. 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles," <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all allegations as true, and draws all reasonable inferences in the plaintiff's favor this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Harris</u>, 572 F.3d at 72

---

[2] Plaintiff's first cause of action asserts relief under the Food Packaging and Labeling Act ("FPLA") and regulations promulgated thereunder, based on Defendant's failure to list Berry Green's weight in U.S. Customary units, such as ounces. <u>See</u> Compl. ¶¶ 27-32 (citing 15 U.S.C. § 1453, 16 C.F.R. § 500). But Plaintiff now concedes that the FPLA does not confer a private right of action. Thus, this cause of action is DISMISSED. The Court will, however, continue to consider the well-pled factual allegations found in Compl. ¶¶ 27-32, to the extent they have relevance to Plaintiff's other causes of action.

(quoting Ashcroft); Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC, 595 F.3d 86, 91 (2d Cir. 2010). Second, only complaints that state a "plausible claim for relief" can survive Rule 12(b)(6). Id. Determining whether a complaint does so is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## II. Breach Of Contract Claim

Plaintiff's second cause of action alleges that Defendant's misleading packaging constituted a breach of contract, or a breach of the covenant of good faith and fair dealing. Defendant responds that Plaintiff cannot bring a contract-based claim because Plaintiff lacked privity with Defendant. The Court agrees.

One may not maintain a contract action against a party with whom it lacks privity. See M. Paladino, Inc. v. J. Lucchese & Sons Contracting Corp., 247 A.D.2d 515, 516 (2d Dep't 1998). Under New York law, no privity exists between a manufacturer and a downstream or indirect purchaser. See, generally, 3 N.Y. Jur. 2d Sales § 233 ("implied warranties of merchantability and fitness for a particular purpose do not run from a manufacturer to a remote purchaser, not in privity with the manufacturer"). To that end, New York courts consistently reject contract-based claims brought by indirect purchasers or

lessees against manufacturers.³ This general rule has some exceptions. But none of these exceptions apply here. For example, downstream purchasers can bring express warranty claims premised on a manufacturer's "sales literature, product brochures and advertisements." 28 N.Y. PRAC., CONTRACT LAW § 19:4. But here, Plaintiff does not allege that Defendant ever expressly warranteed that the product's volume approximated that of its package. Likewise, implied warranty claims for personal injury do not require contractual privity. See 28 N.Y. PRAC., CONTRACT LAW § 19:22. But here, Plaintiff alleges only "economic loss," not personal injury. Id.

Because Plaintiff neither pleads facts suggesting that she had privity with Defendant, nor facts indicating that an exception to contractual privity applies, Plaintiff's breach of contract claim must be dismissed.

III. Common Law Fraud

Plaintiff's third cause of action asserts common law fraud. To plead common law fraud, Plaintiff must allege: (1) a

---

³ See, e.g., Jesmer v. Retail Magic, Inc., 55 A.D.3d 171, 173, 182-183, 863 N.Y.S.2d 737, 739, 744-45 (2d Dep't 2008) (rejecting contract claims brought by "a dissatisfied end user of a computer system . . . against the system's manufacturer . . . where the end user did not purchase the system from the manufacturer"); Comsewogue Union Free School Dist. v. Allied-Trent Roofing Systems, Inc., 272 A.D.2d 360, 361, 707 N.Y.S.2d 657, 658 (2d Dep't 2000); Ofsowitz v. Georgie Boy Mfg., Inc., 231 A.D.2d 858, 858, 647 N.Y.S.2d 887, 888 (4th Dep't 1996); DiCintio v. DaimlerChrysler Corp., 713 N.Y.S.2d 808, 812 (N.Y. Sup. Ct., N.Y. County 2000).

representation of material fact; (2) falsity; (3) scienter; (4) reliance; and (5) injury. See Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 57, 720 N.E.2d 892, 898 (N.Y. 1999). Under FED. R. CIV. P. 9(b), Plaintiff "must state with particularity the circumstances constituting fraud or mistake." To that end, Plaintiff must: (1) specify the alleged fraudulent statements; (2) identify the speaker; (3) state where, when and to whom the statements were made; and (4) explain why the statements were fraudulent. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). "Malice, intent, knowledge, and other conditions of a person's mine may be averred generally." Fed. R. Civ. P. 9(b). But Plaintiff "must still plead the events which they claim give rise to an inference of knowledge." In re DDAVP Direct Purchaser Antitrust Litig., 585 F.3d 677, 695 (2d Cir. 2009).

Here, Defendant contends that Plaintiff does not plead fraud because Plaintiff "cannot point to a single representation of material fact that was false." Def. Br. at 12. In response, Plaintiff argues that Berry Green's packaging implicitly represented that it contained more product than it actually did. In this regard, the Court notes that New York courts have, on occasion, recognized fraud claims premised on implied or implicit representations. See Bankers Trust Co. v. J. V. Dowler & Co., Inc., 47 N.Y.2d 128, 137, 390 N.E.2d 766, 770, 417

6

N.Y.S.2d 47, 52 (N.Y. 1979); AIU Ins. Co. v. Deajess Medical Imaging, P.C., 882 N.Y.S.2d 812, 820 (N.Y. Sup. Ct., Nassau County 2009); 60A N.Y. Jur. 2d Fraud and Deceit § 90. Thus, the Court turns to whether the Complaint pleads: (1) that Berry Green's packing contained implicit misrepresentations; (2) what these implicit misrepresentations were; and (3) that these misrepresentations were material.

With respect to (1), the Court agrees that the Complaint sufficiently pleads that Berry Green's packaging contained implicit misrepresentations. Specifically, the Complaint alleges that Berry Green's packaging "makes it appear that the consumer is buying more than what is actually sold." Compl. ¶ 1. In other words, the Complaint alleges that consumers assume that the size of a product's packaging bares a reasonable relationship to how much product the packaging contains. Thus, by including too much empty space or slack fill, Berry Green's packaging implicitly represents that it contains "more" than it actually does.

This leads to (2): by alleging that Defendant represented that the box contains "more" Berry Green than it actually does, what does the Complaint allege is actually being misrepresented? Taken in context, "more" cannot mean weight, because the box accurately discloses that the product weighs 180 grams. Nor can "more" mean servings, because the box accurately

7

discloses that it contains 30 servings. Rather, at most, the Complaint alleges that Berry Green's packaging implicitly misrepresents the product's <u>volume</u> and <u>density</u>. After all, if Berry Green was less dense, then 180 grams of product might, in fact, fill the unnecessarily large jar it came in.

The question then turns to (3): does the Complaint plead facts to suggest that this misrepresentation was material? And the answer is no. Plaintiff pleads nothing to suggest that she, or other class members, cared about Berry Green's density. Nor does Plaintiff plead any facts indicating that Berry Green's unexpectedly higher density deluded her, or other class members, into thinking that Berry Green's box contained more than the 30 servings it expressly listed. Thus, Plaintiff has failed to plead facts sufficient to establish the alleged misrepresentation's materiality. <u>See</u> <u>Gaidon v. Guardian Life Ins. Co. of America</u>, 94 N.Y.2d 330, 350, 725 N.E.2d 598, 607, 704 N.Y.S.2d 177, 186 (N.Y. 1999) (finding that defendants' alleged misrepresentation, although sufficient to plead a cause of action under N.Y. GEN. BUS. L. § 349, did not rise to the level of fraud). And, accordingly, Plaintiff's common law fraud claim must also be dismissed.

IV. Unjust Enrichment[4]

Plaintiff's fifth cause of action asserts unjust enrichment. "[T]he essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." Sperry v. Crompton Corp., 8 N.Y.3d 204, 215-216, 863 N.E.2d 1012, 101 (N.Y. 2007).

Here, Defendant principally argues that Plaintiff fails to plead unjust enrichment because Plaintiff does not allege that it had "some of type of direct dealing or actual, substantive relationship with a defendant." Def. Br. at 19 (citing Redtail Leasing, Inc. v. Bellezza, 95-CV-5191, 1997 WL 603496, *8 (S.D.N.Y. 1997). Defendant accurately describes New York law in 1997, as the S.D.N.Y. understood it. But this is not the law today, as promulgated by New York's own courts.

---

[4] For subject matter jurisdiction reasons, the Court considers Plaintiff's unjust enrichment claim before Plaintiff's fourth cause of action, which depends upon New York statutes. The unjust enrichment claim applies to the entire putative claim, whereas the New York statutory claim covers only New York purchasers. Here, Plaintiff predicates subject matter jurisdiction on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which imposes a $5 million amount in controversy requirement. There is no dispute that Plaintiff meets this requirement if she represents a nationwide class. But, based on the declaration submitted by Mark Galvin, New Chapter's President and Chief Financial Officer, the Court has serious doubts about whether a New York-only class would meet CAFA's threshold. Thus, if the Court dismissed all of Plaintiff's nationwide claims, it would likely lack subject matter jurisdiction over Plaintiff's remaining state law claims.

9

Today, New York law does not require an unjust enrichment plaintiff to plead "direct dealing," or an "actual, substantive relationship" with the defendant. It merely requires that the plaintiff's relationship with a defendant not be "too attenuated." Sperry, 8 N.Y.3d at 215-216. For example, a product's indirect purchaser cannot assert an unjust enrichment claim against an entity that manufactured one of that product's ingredients. See Id. (tire purchaser could not assert unjust enrichment claim against manufacturer who produced chemical that went into tire's rubber); State ex rel. Spitzer v. Daicel Chemical Industries, Ltd., 42 A.D.3d 301, 304, 840 N.Y.S.2d 8, 12 (1st Dep't 2007) (no unjust enrichment claim against food additives manufacturer, because "end users" were "too attenuated from the producers of the chemicals which are among the ingredients of those products"). But the indirect purchaser can assert such an unjust enrichment claim against the manufacturer of the product itself. For instance, in Cox v. Microsoft Corp., 8 A.D.3d 39, 40-41, 778 N.Y.S.2d 147, 149 (1st Dep't 2004), the First Department permitted an indirect purchaser of Microsoft's computer software to sue Microsoft for unjust enrichment. See also Bildstein v. MasterCard International, Inc., 03-CV-9826I, 2005 WL 1324972, *5 (S.D.N.Y. 2005) (credit card user stated unjust enrichment claim against Mastercard, despite receiving card through an issuing bank). Here,

Plaintiff is an indirect Berry Green purchaser who is suing Berry Green's manufacturer. She is not suing the manufacturer of a Berry Green ingredient. Thus, much like the Cox plaintiff, she is not "too attenuated" from Berry Green to maintain an unjust enrichment claim. Sperry, 8 N.Y.3d at 215-216; Cox, 778 N.Y.S.2d at 149.[5]

Defendant also argues that Plaintiff's unjust enrichment claim fails because Plaintiff received the exact amount of product listed on the package – 180 grams and 30 tablespoon-sized servings. Thus, Defendant argues that "equity and good conscience" do not require it to remit any of the purchase price. For purposes of this motion, the Court disagrees. Under New York law, it is "contrary to equity and good conscience" to enable a party to benefit from misleading representations. See Firestone v. Miroth Const. Co., 215 A.D. 564, 565, 214 N.Y.S. 239, 240 (1st Dep't 1926); see also Jermyn

---

[5] Defendant also relies heavily on Gale v. International Business Machines Corp., 9 A.D.3d 446, 781 N.Y.S.2d 45, 47 (2d Dep't 2004), which affirmed dismissal of an unjust enrichment claim brought by an indirect purchaser of a hard disk drive against the hard drive's manufacturer. But Defendant misreads Gale. Gale did not dismiss the plaintiff's complaint on the grounds that plaintiff was an indirect purchaser. Rather, Gale dismissed the complaint based on a minor pleading defect – the failure to name the hard drive's seller. Id. Here, Plaintiff has named the seller: a Whole Foods Market in Manhasset, New York. Pl. Ex. 4. And, although Plaintiff did not specifically plead this fact in the Complaint, the Court can take judicial notice of it, because Plaintiff relied upon her Whole Foods receipt in bringing suit. See Kahn v. Oppenheimer & Co., Inc., 08-CV-11368, 2009 WL 4333457, *2 (S.D.N.Y. 2009).

v. Best Buy Stores, L.P., 256 F.R.D. 418, 423 (S.D.N.Y. 2009) (certifying a class action asserting, among other things, an unjust enrichment claim premised on a misleading advertisement). Here the Court sufficiently pleads that Defendant made "misleading representations." Firestone, 214 N.Y.S. at 240. Specifically, the Complaint alleges that Berry Green's packaging contained empty space or slack fill. Compl. ¶¶ 1, 2, 4, 6, 16, 17. Slack fill is "misleading" if it is: (1) "nonfunctional" (i.e., not for a valid purpose); and (2) the container "does not allow the consumer to fully view its contents." 21 C.F.R. § 100.100(a).[6] Drawing reasonable inferences in Plaintiff's favor, the Complaint pleads both of these prongs. Specifically, the Complaint alleges that Defendant included the slack fill "to mislead the consumer," and that the packaging "is geared to making the customer believe that he/she is buying more of the product." Compl. ¶¶ 17, 19. Misleading consumers is not a valid reason to package a product with slack fill. See 21 C.F.R. § 100.100(a)(1-6). And, unquestionably, Berry Green's packaging "does not allow the consumer to fully view its

---

[6] The Court takes judicial notice of 21 C.F.R. § 100.100(a). See In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig., 09-MD-20232010, U.S. Dist. LEXIS 31021, *26-27 (E.D.N.Y. Mar. 30, 2010) (taking "judicial notice of regulations and their contents to measure the standard of defendant's behavior").

12

contents." Pl. Ex. 2.⁷ It follows then that Plaintiff has pled misleading representations sufficient to state an unjust enrichment claim predicated on a slack fill theory.

Plaintiff's unjust enrichment claim predicated on a metric system theory does not fare as well. Contrary to Plaintiff's representations in opposing this motion, the Complaint never pleads that Plaintiff is unfamiliar with the metric system. And, without such a factual pleading, Plaintiff cannot legitimately allege that it is "against equity and good conscience to permit the defendant to retain what is sought to be recovered." Sperry, 8 N.Y.3d at 215-216. Thus, to the extent that the fifth cause of action seeks recovery based on Berry Green listing its weight only in grams, not ounces, the claim is dismissed. The Court does, however, grant Plaintiff leave to file an Amended Complaint to correct this deficiency.⁸

---

⁷ Berry Green's packaging consists of a purple and green cardboard box, which encloses a dark brownish jar. There is no way to see inside the box, much less the jar enclosed within.

⁸ The Court's leave for Plaintiff to file an Amended Complaint should not be misinterpreted as a sign that the Court would be willing to certify a class action based on the metric system theory. Although the Court does not pre-judge the issue, Plaintiff's metric system claims would likely raise significant individual issues concerning each consumer's knowledge and understanding of metric weights. Millions of Americans have immigrated from, lived in, or travelled extensively to metric system countries. And many more have gained familiarity with the metric system through school or work. Given these individual issues, it is difficult to comprehend how such a class action could proceed. Alternatively, should Plaintiff

13

V.   N.Y. Gen. Bus. Law §§ 349, 350

Plaintiff's fourth cause of action seeks relief under N.Y. Gen. Bus. Law §§ 349, 350. Section 349 precludes, among other things, "[d]eceptive acts or practices in the conduct of any business, trade or commerce." Section 350 precludes, among other things, "[f]alse advertising in the conduct of any business, trade or commerce." The Court addresses each of these sections in turn.

A.   § 349

To state a § 349 claim, a plaintiff must allege that the defendant has engaged "in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." Small, 94 N.Y.2d at 55 (citations and quotations omitted). Defendant claims that Plaintiff has failed to meet that standard. But Defendant is wrong. First, as discussed above, Defendant's packaging is "misleading" for purposes of this motion. See supra at __. Second, Plaintiff alleges that that packaging "gives the false impression that the consumer is buying more than they are actually receiving;" and thus sufficiently pleads that the

---

wish to limit the applicable class to the metric ignorant, it is difficult to imagine how to ascertain such a class.

packaging was "misleading in a material way."[9] And finally, Plaintiff alleges that, had she understood "the true amount of the product," she "would not have purchased" it. Compl. ¶ 42. Thus, Plaintiff has properly alleged injury. Accordingly, Plaintiff's § 349 claim survives Defendant's motion.[10]

B. § 350

Defendant also seeks to dismiss Plaintiff's § 350 claim. First, Defendant argues that Berry Green's packaging is not an "advertisement" within the statute's meaning. But Defendant is wrong. As an initial matter, N.Y. Gen. Bus. Law § 350-a expressly defines "advertisement" to include "labeling." Thus, the statute includes claims made on a product's package. In addition, the limited authority on point suggests that excessive slack fill states a claim for false advertising under § 350. Specifically, in Mennen Co. v. Gillette Co., 565 F. Supp. 648, 655 (S.D.N.Y. 1983), Judge Milton Pollack rejected plaintiff's claims that defendant violated §§ 349, 350 by selling deodorant in a box "larger than physically required by

---

[9] New York law recognizes that a statement can be materially misleading without being a material misrepresentation. See Gaidon, 94 N.Y.2d at 344-350 ("misleading" representations "created unrealistic expectations" about financial product, sufficient to state a § 349 claim, but, although defendant made "misrepresentations," these did not "rise[] to the level of fraud"). Accordingly, so does this Court.

[10] Again, the Court permits the § 349 claim to survive only on the slack fill theory. Plaintiff, however, may file an Amended Complaint to sufficiently plead a metric system theory.

15

the size of the primary container." But he did so after a bench trial, not a motion to dismiss. And he did so based on his finding that plaintiff failed to submit sufficient evidence showing that "the size of the box has any capacity to deceive." Id. By implication then, Judge Pollock recognized slack fill claims as cognizable under §§ 349, 350, and denied relief based on plaintiff's lack of evidence, not the legal impossibility of plaintiff's pleading. Here, of course, Plaintiff does not yet need to submit evidence to support her claims. She need only set forth sufficient factual allegations to render these claims "plausible." And she has done so. Accordingly, Plaintiff's § 350 slack fill claim survives Defendant's motion.[11]

---

[11] Again, Plaintiff may re-plead the metric system theory if she so wishes.

## CONCLUSION

Defendant's motion to dismiss is GRANTED IN PART AND DENIED IN PART. Plaintiff's first, second, and third causes of action are dismissed. Plaintiff's fourth and fifth causes of action are dismissed to the extent that they are predicted on a metric system theory, but are not dismissed to the extent that they assert a slack fill theory. Plaintiff may, however, re-plead these causes of action to properly allege a metric system theory.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  Central Islip, New York
        May  19 , 2010